IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OHIO NATIONAL LIFE ASSURANCE CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | C.A. NO.  4:11-CV-01772 |
| BERT T. DUNKEN AND PATRICK S. WELLNITZ, | § § § | |
| Defendants. | § § | |

## MOTION TO DISQUALIFY

Defendant Ohio National Life Assurance Corporation ("ONLAC") files this motion and brief in support to disqualify counsel for Defendant Bert T. Dunken ("Dunken"), Winstead, PC ("Winstead"), based on a conflict of interest, and states:

## I.    INTRODUCTION AND SUMMARY

Plaintiff ONLAC is a wholly owned subsidiary of The Ohio National Life Insurance Company ("ONLIC").   ONLAC and ONLIC are the two primary subsidiaries of Ohio National Financial Services, Inc. ("ONFS"), through which the Ohio National family of companies (collectively, "Ohio National") market their core insurance, annuity, and retirement products.   Winstead has represented, and continues to act as counsel for ONLIC (and, hence, for Ohio National) in connection with matters arising out of alleged agent misconduct culminating in the

action styled *Varnell v. The Ohio National Life Insurance Company*, No. 3:10-cv-1194 in the United States District Court, Northern District of Texas, and a related investigation by the Texas Department of Insurance (the "Varnell Matter").

The epicenter of this case also centers on agent misconduct, namely Dunken's alleged fraud and breach of fiduciary duty to Ohio National.  While still representing Ohio National in the Varnell Matter, Winstead has taken on the representation of Dunken in this case and, on his behalf, recently filed an answer and a motion to dismiss Ohio National's claims against Dunken.   Winstead's representation of Ohio National in the Varnell Matter overlaps with its representation of Dunken in this case, and Winstead should therefore be disqualified from acting as counsel to Dunken, who is adverse to Ohio National. Alternatively, Winstead is disqualified from representing Dunken here because (i) this and the Varnell Matter are substantially related; and (ii) in any event, Winstead was provided with, and has retained, Ohio National's confidential information.

## II.   BACKGROUND FACTS

### A.   Ohio National

1.    ONLAC and ONLIC are the primary subsidiaries of ONFS, through which Ohio National markets its core insurance, annuity, and retirement products. [Price Decl. ¶ 2, attached hereto as Exhibit A.]

2.     Although separate corporate entities, ONLIC and ONLAC publicize their affiliation through Ohio National on their website, ohionational.com.  [*Id.* ¶ 3.]  For example, Ohio National's website states:

> Comprehensive Product Portfolio
>
> Ohio National Financial Services, through its affiliated insurance companies (The Ohio National Life Insurance Company and Ohio National Life Assurance Corporation), markets a variety of insurance and financial products
>
> * * *
>
> Since its founding in 1909, Ohio National has strategically grown its distribution channels and formed important relationships to ensure its financial strength.
>
> Ohio National and its family of companies are a known leader in the insurance industry for providing quality low-cost products and having superior financial strength.
>
> Our core products of individual life insurance, individual variable and fixed annuities, retirement products and disability income insurance are available from:
>
> The Ohio National Life Insurance Company (ONLIC), a wholly owned stock subsidiary
>
> Ohio National Life Assurance Corporation (ONLAC), a wholly owned stock subsidiary of ONLIC….

[*Id.* ¶ 3 Ex. 1.]

3.     Ohio National markets its family of companies as a one-stop shop for assorted insurance and financial services needs, promoting a single "shared

Corporate Vision."[1]  [*Id.* ¶ 4]  The operations and management of ONLIC and ONLAC are also integrated in several respects, and they are run from the same locations. [*Id.*]

4.     One example of this integration is that ONLIC employees perform management and operations functions for both ONLAC and ONLIC.  [*Id.*]  In particular, ONLIC employees handle all matters relating to agent contracting and licensing for both entities. [*Id.* ¶ 5]  In addition, contracts with agents are between the agent, on one hand, and **both** ONLIC and ONLAC, on the other:

[*Id.* ¶ 5 Ex. 2]

5.     Although employed by ONLIC, the same individuals perform agency management duties for both ONLIC and ONLAC.  [*Id.* ¶¶ 4-5.]

6.     Ohio National also utilizes a common legal department for managing disputes and litigation on behalf of ONLAC and ONLIC. [*Id.* ¶ 6.]  In particular, William Price ("Price") is an employee of ONFS, and also serves as Vice President

---

[1] https://www.ohionational.com/portal/site/client/vision.

**MOTION TO DISQUALIFY**– **Page 4**

& Assistant General Counsel for ONLIC **and** for ONLAC.  [*Id.*]  As such, Price manages litigation on behalf of both ONLAC and ONLIC, all for the ultimate benefit of the Ohio National family of companies, including ONFS.  [*Id.*]

## B.   THE VARNELL MATTER

7.     From Ohio National's perspective (a view shared by the Texas Department of Insurance, the "TDI"), the Varnell Matter boiled down to agent misconduct and culpability.  [*Id.* ¶¶ 7, 14 Ex. 6.]  The allegations in this case also relate to agent misconduct, ranging from negligence and breach of contract, to fraud, conspiracy, and Dunken's breach of fiduciary duties owed to ONLAC. [FAC ¶ 7.]

8.     In the Joint Conference Report filed in the Varnell Matter, Winstead referred to its client simply as "Ohio National," providing the following description of ONLIC's claims against the agent, Donovan:

> … Ohio National denies the merit of and is contesting Varnell's claims.  However, if and to the extent that she prevails, Donovan [the agent] and Lincoln Financial are liable to Ohio National as a result of Donovan's acts or omissions, which were negligent, and contributed to the damages allegedly suffered by Varnell. Donovan was allegedly immediately advised of the Decedent's passing, but did not notify Ohio National. During that time, the amount invested by the Decedent declined due to market fluctuations. Ohio National therefore joins LFAC and Donovan as responsible third parties and is further entitled to contribution from LFAC and Donovan toward any liability that may be found to exist from Ohio

> National to Varnell as a result of the occurrence made the
> basis of this action.

[*Id*. Joint Status Report dated Sep. 7, 2010, attached hereto as Ex. B]

9.     Notably, Price serves as the managing inside attorney for Ohio National in both the Varnell Matter and this action and has had numerous confidential and privileged communications with Winstead.   [Price Decl. ¶ 8.] Winstead advised Price regarding a range of issues, including the viability of claims against the agent, persons with relevant knowledge, and settlement and litigation strategy with respect to the agent.  [*Id*.]

10.     In addition, Winstead's work in the Varnell Matter involved collecting and evaluating confidential information of both ONLIC and ONLAC.  Because ONLIC employees handle ONLAC agency issues, legal services done for ONLIC regarding agency issues is also intended to benefit ONLAC, and vice versa.  [*Id*. ¶ 9.]  Moreover, communications between inside counsel and outside counsel representing Ohio National are kept confidential.   [*Id*. ¶ 10.]   These communications involve (among other things) discussion of Ohio National's overall litigation strategy, identification and evaluation of company witnesses, legal arguments and theories regarding agent liability, settlement strategy, and trial strategy, to name a few, all of which are common by and between ONLIC and ONLAC with respect to agency-related matters anticipated in this lawsuit.  [*Id*.]

11.    Ohio National reasonably expected that Winstead would be loyal to both ONLIC and ONLAC.  [*Id.* ¶ 11.]  For example, Ohio National has adopted a uniform code of ethics and rules regarding conflicts of interest for its employees, officers and directors, clearly noting that the rules apply to **all** Ohio National subsidiaries and affiliates.  [*Id.* ¶ 11 Ex. 3]  Consistent with their "shared Corporate Vision," Ohio National has long expected that attorneys engaged to represent any of its subsidiaries or affiliates would not take on the representation of other clients with interests adverse to Ohio National.

### C.    WINSTEAD'S OVERLAPPING REPRESENTATION OF OHIO NATIONAL AND DUNKEN

12.    Ohio National engaged Winstead on May 28, 2010, in connection with representing ONLIC in the Varnell Matter.  Although Winstead's engagement letter refers to representation of the "Client" (an undefined term), nowhere does Winstead indicate that its representation is solely for the benefit of ONLIC, rather than Ohio National.  [*Id.* ¶ 12 Ex. 4.]

13.    To date, Winstead has been paid over $50,000 in connection with the Varnell Matter—the last check cut as recently as July 20, 2011.  [*Id.* ¶ 13 Ex. 5.] Indeed, Winstead continues to represent Ohio National in the Varnell Matter, as noted by an email sent by Winstead to Price dated July 21, 2011.  [*Id.* Ex. 6]

14.    The following timeline depicts Winstead's ongoing representation of ONLIC and adverse representation of Dunken in this case:

| Varnell Matter | | ONLAC v. Dunken | |
|---|---|---|---|
| 5/28/2010 | Ohio National engages Winstead | | |
| 4/8/2011 | Winstead cross-examines Ohio National agent | | |
| | | 5/9/2011 | ONLAC files Complaint against Dunken |
| 5/27/2011 | Winstead files MSJ for ONLIC | 6/1/2011 | Dunken served |
| | | 6/14/2011 | Recognizing conflict, Winstead contacts Ohio National's outside counsel to request waiver |
| | | 6/16/2011 | Winstead, on behalf of Dunken, requests extension of answer date |
| 6/20/2011 | Winstead files Joint Motion to Dismiss | 6/20/2011 | (i)  Ohio National advises it will not waive conflict; and (ii) agrees to extension of answer date |
| 6/21/2011 | Order of Dismissal | 6/21/2011 | Dunken's original answer date (before exension) |
| | | 7/18/2011 | Dunken files his Answer and motion to dismiss |
| 7/21/2011 | Winstead corresponds with TDI on behalf of Ohio National re: agent | | |

[*See* Price Decl. Exs. 4-6; Ex. B (Joint Status Report); Ex. C (Excerpt of agent deposition); ECF Nos. 1 (complaint), 5 (return of service), 7 (motion for extension); Davenport Decl. Ex. 1, attached hereto as Ex. D.]

15.     Winstead has not terminated its representation of Ohio National in the Varnell Matter or returned any of its confidential information.  To the contrary, Winstead has continued to act on behalf of Ohio National in the Varnell Matter in connection with the TDI.  [Price Decl. ¶ 13 Ex. 6.]  Lest there be any doubt the representation continues still, Winstead's email to Ohio National relating to the TDI is dated July 21, 2011, *after* Winstead filed an answer and motion to dismiss

on behalf of Dunken in this case seeking to dismiss Ohio National's claims.  [*Cf.* Price Decl. Ex. 6 *with* ECF No. 7.]

16.    A substantial relationship exists between the issues to be litigated here and the issues in dispute in the Varnell Matter, especially those concerning the relationship between Ohio National and its agents, and agent liability for misconduct.  [Price Decl. ¶ 14.]

## III.   ARGUMENT AND AUTHORITIES

### A.    THE COURT HAS THE AUTHORITY TO DISQUALIFY WINSTEAD

Motions to disqualify an attorney are substantive motions resolved under standards defined by federal law.  *In Re Dresser Indus., Inc.,* 972 F.2d 540, 543 (5th Cir. 1992).  The Court's consideration is governed by the ethical rules in the state and national professions in light of the public interest and rights of the litigants, and is also informed by its own Local Rules.  *See id; In Re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992), *cert. denied,* 113 S.Ct. 1262 (1992); *F.D.I.C. v. U.S. Fire Ins. Co*., 50 F.3d 1304, 1312 (5th Cir. 1995).  The Court however is not limited to the state's ethical rules, but may also consider national norms of professional conduct.  *See In Re American Airlines, Inc.*, 972 F.2d at 610.  If a conflict of interest exists, the Court can and should disqualify an attorney and his law firm under its general supervisory authority over lawyers in

cases before it. *See U.S. v. Kerlegon*, 690 F. Supp. 541, 545 (W.D. La. 1988), *aff'd* 892 F.2d 1223 (5th Cir. 1990).

## B.  CONCURRENT REPRESENTATION

The Fifth Circuit applies the more stringent national standard for concurrent representations adopted by ABA Model Rule 1.7.[2] *See Rembrandt Techs. v. Comcast Corp.*, No. 2:05-cv-443, 2007 U.S. Dist. LEXIS 9027 (E.D. Tex. Feb. 8, 2007) (citing *In re Dresser*, 972 F.2d at 544)). Winstead must be disqualified here because (i) Winstead's representation of Dunken and of Ohio National is concurrent, and (ii) Dunken is directly adverse to Ohio National.[3]

### 1.  ONLAC is Winstead's Current Client.

#### a.  ONLAC, as ONLIC's Subsidiary, is Winstead's Client.

Ample case law holds that representation of a subsidiary corporation is equivalent to representation of the parent, and vice versa, for disqualification

---

[2] ABA Model Rule 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.
>
> A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Unlike the Texas version of the rule, the ABA's approach does not require a showing that he two matters are "substantially related." *Reinbrandt Techs*. 2007 U.S. Dist. LEXIS 9027 at *8.

[3] Disqualification results even if the two matters are unrelated, unless the client consents. *See In re Dresser Indus., Inc.*, 972 F.2d at 541.

purposes.  *See, e.g., JPMorgan Chase Bank ex rel. Mahonia Ltd. v. Liberty Mut. Ins. Co.,* 189 F. Supp. 2d 20, 23-24 (S.D.N.Y. 2002) (any concurrent adverse representation against subsidiary would "undercut a lawyer's duty of loyalty to his client and cast considerable doubt on the independence of his professional judgment" ); *Univ. of Rochester v. G.D. Searle & Co., Inc.*, No. 00-CV-6161, 2000 U.S. Dist. LEXIS 19030, at *34 (W.D.N.Y. Dec. 11, 2000) ("for conflict purposes, representation of a subsidiary corporation is equivalent to representation of the parent, and vice versa"); *Stratagem Dev. Corp. v. Heron Int'l N. B.,* 756 F. Supp. 789, 793 (S.D. N.Y. 1991).  Accordingly, both ONLIC and its primary subsidiary, ONLAC, are Winstead's clients for conflicts purposes.

Even if something more than a parent/subsidiary relationship is required to demonstrate ONLAC is Winstead's client, the record here supports disqualification because "circumstances are such that the affiliate should also be considered a client."  *Honeywell Int'l, Inc. v. Philips Lumileds Lighting Co.*, No. 2:07-CV-463, 2009 U.S. Dist. LEXIS 12496, *5 (E.D. Tex. Jan. 9, 2009) (quoting Model Rules of Prof'l Conduct 1.7 at cmt. 34 and ABA Formal Op. 95-390).  Some key facts for this inquiry in the parent/subsidiary context inculde:

> (1) whether the corporation and the subsidiary share a common legal department and management duties, (2) whether the lawyer's work for a parent corporation benefits a subsidiary, or (3) whether the lawyer's work for the parent involves collecting confidential information.

*Id*. at *7-8 (citing ABA Formal Op. 95-390 at 5-6).  In addition, "manifestations to the public" about the close family relationships and integrated business operations of otherwise distinct corporate entities support treating them as one client for conflicts purposes.  *Id*. at *8.

All of these factors are present here.  ONLIC and ONLAC share a legal department and business operations, including contracting, licensing and managing agents for both entities.  Under these circumstances, a lawyer's advice and work with respect to legal matters arising out of ONLIC and ONLAC's joint agency relationships necessarily benefits both the parent and subsidiary.  For the same reason, Winstead's fact investigation and legal analysis regarding claims against Ohio National agents necessarily entails collecting confidential information of, and providing legal advice to, both entities.  That should not come as a surprise to Winstead inasmuch as it accepted over $50,000 in legal fees from ONFS, whose checks make clear the representation was for the benefit of ONFS and, hence, the Ohio National corporate family.  And of course, given the publicized integrated nature of ONLIC and ONLAC's operations and joint marketing of Ohio National as a single, unified brand, Winstead knew (or at least should have known) about the overlap at the outset of its representation in the Varnell Matter.

Moreover, Winstead's attorneys bear the burden of identifying and resolving potential conflicts of interest with corporate affiliates:

> where the problem has been created by modern
> corporations, the onus is squarely on the lawyer to
> anticipate and resolve conflicts of interest involving
> corporate affiliates.

*Honeywell Int'l, Inc.*, 2009 U.S. Dist. LEXIS 12496 at *9. Winstead's engagement

letter in the Varnell Matter does not clearly define the term "Client" to exclude

ONLIC's primary subsidiary (ONLAC), with which it shares a legal department

and assorted business operations. Under these circumstances, any doubt about the

identity of Winstead's "Client" should be resolved against the drafter of the

engagement letter, Winstead, and in favor of disqualification.

> b.   Winstead's Representation of Dunken is
>      Concurrent with its Representation of
>      <u>Ohio National for Conflicts Purposes.</u>

Where two matters overlap, they are considered concurrent. *See Rembrandt*

*Techs.,* 2007 U.S. Dist. LEXIS 9027, at *9-10. This action was filed on May 9,

2011. Dunken was served on June 1, 2011, and Winstead began representing

Dunken no later than June 16, 2011. [Davenport Decl. Ex. 1 (requesting an

extension of answer date on Dunken's behalf).] Four days later, on June 20, 2011,

Winstead appeared on behalf of Dunken in this case by filing a motion to extend

the deadline for Dunken to answer. [ECF No. 7 (Winstead filed the motion as

"Attorney-In-Charge" for Dunken).] Significantly, the lawsuit in the Varnell

Matter was not dismissed until June 21, 2011. On these facts alone, Winstead

clearly represented Ohio National in the Varnell Matter *during* the pendency of

this action; the standard applicable to assessing conflicts of interest in concurrent representations therefore governs whether Winstead should be disqualified here. *See Rembrandt Techs.*, 2007 U.S. LEXIS 9027, at *9-10 (rejecting argument that earlier settlement triggered "former client" standard for conflicts of interest analysis where the two lawsuits overlapped).

Moreover, Winstead's representation of Ohio National did not terminate upon dismissal of the lawsuit in the Varnell Matter.  To the contrary, Winstead represented ONLIC both in the lawsuit *and* in response to the TDI's related investigation, which collectively comprise the Varnell Matter.  Winstead  has continued to act on ONLIC's behalf communicating with the TDI through July of this year.  [Price Decl. Ex. 6.]

Simply put, Winstead's representation of Dunken in this case is concurrent with its representation of Ohio National in the Varnell Matter.

c.     Winstead's Concurrent Representation of
Dunken is Adverse to Ohio National.

In this lawsuit, ONLAC seeks to recover damages caused by Dunken's conspiracy to fraudulently procure a $10 Million life insurance policy on a 76-year old insured with the intent to sell the policy to the highest bidding investor on a secondary market, known as the life settlement market.  In particular, ONLAC seeks to recoup commissions paid to Dunken and requests declaratory judgment that Dunken is not entitled to future commissions under his General Agent

Contract.  [FAC ¶ 7 (ECF No. 2).]  Since Winstead seeks to defend Dunken against ONLAC's claims, the representation is directly adverse to Ohio National.

> d.    Winstead's Concurrent Representation Raises
> More than an Appearance of Impropriety.

The likelihood of public suspicion of impropriety here further supports disqualification and outweighs Dunken's right to counsel of his choice.  *See Rembrandt Techs.*, 2007 U.S. LEXIS 9027, at *4 (citing *FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995)).  Several factors influence this inquiry, including:  "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case."  *In re Dresser*, 972 F.2d at 544.

The timing here is conspicuous.  Winstead recognized the conflict and asked Ohio National to waive it.  [Davenport Decl. ¶ 4.]  Ohio National refused.  [*Id.* ¶ 5.]  Winstead then filed a motion in this Court on June 20, 2011, seeking a three-week extension of Dunken's answer deadline and simultaneously filed dismissal documents in the Varnell Matter.  [ECF No. 7; *see also* ECF No. 41 in the lawsuit filed in the Varnell Matter.]  In other words, Winstead delayed Dunken's answer date until after the lawsuit in the Varnell Matter was dismissed.

Although Winstead's delay in answering this lawsuit is immaterial (since its representation has continued as to the TDI, as set forth above), it has the appearance of impropriety. *See JPMorgan Chase Bank,* 189 F. Supp. 2d at 24 (requiring disqualification because, to allow concurrent adverse representation against company's "primary subsidiary" would "provide support for the public's increasingly cynical view of the legal profession"). Given the timing, there is a strong likelihood of public suspicion that Winstead has engaged in self-dealing and disregarded its duty of loyalty to Ohio National. Since this case is at a nascent stage, Dunken will suffer no prejudice by having to seek other counsel, especially since Winstead knew about the conflict and Ohio National's objection to Winstead's representation of Dunken at least three weeks before Dunken filed his answer and motion to dismiss. The scale thus tips easily in favor of disqualification.

## C. ALTERNATIVELY, WINSTEAD'S REPRESENTATION OF DUNKEN IS ADVERSE TO A FORMER CLIENT, IN A SUBSTANTIALLY RELATED MATTER

Alternatively, Winstead must be disqualified even if Ohio National is considered a former client. The Fifth Circuit has explained that the Court should disqualify counsel based on two primary concerns: enforcing the lawyer's duty to preserve his former client's confidences and his duty of loyalty. *See In Re American Airlines, Inc.* 972 F.2d at 618. The grounds for disqualifying Winstead are thus broader than simply protecting confidential information, but must also

take into account the expectation of Ohio National as to Winstead's duty of loyalty. *Id.* at 618. As the Fifth Circuit explained:

> Disqualification rules not only preserve the purity of particular trials but also unavoidably affect relationships among attorneys and clients in general. This court bars attorneys from appearing in substantially related matters not only to protect individual parties against the adverse use of information but also to aid the frank exchange between attorney and client.

*Id.* at 619.

Under this standard, the Court need only decide whether the Varnell Matter relates to the "present action in a way reasonable persons would understand as important to the issues involved." *In re American Airlines, Inc.*, 972 F.2d at 623. In doing so, the Court reviews the factual allegations and topics, as well as the legal claims involved. *Id.* at 622-623. Because the thrust of the claims at issue in both cases is agent misconduct (as set forth above), there is considerable overlap in the facts (not to mention persons with knowledge), topics, and legal issues. "Once it is established that the prior matters are substantially related to the present case, the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation." *In re American Airlines, Inc.*, 972 F.2d at 623. Because a substantial relationship exists between the Varnell Matter and this case, Winstead must be disqualified.

Winstead's actions here also justify the Fifth Circuit's concern about enforcing attorneys' loyalty to their clients, even former clients.  Even if the Court concludes Winstead effectively terminated its representation of Ohio National before undertaking the representation of Dunken (which it has not), Winstead's actions are tainted with disloyalty.  Winstead's attempt to switch sides and delay Dunken's answer date raises the question of exactly where do Winstead's loyalties lie – with Ohio National (for whom Winstead continued to perform legal services and owed allegiance) or to Dunken (with whom Winstead consulted on this case).

## D.    ALTERNATIVELY, WINSTEAD SHOULD BE DISQUALIFIED TO PROTECT OHIO NATIONAL'S CONFIDENTIAL INFORMATION

Alternatively, even if the matters are not substantially related, Winstead must be disqualified because of a "reasonable probability that confidential information related to the administering of the advice could be used to [Ohio National's] disadvantage in this litigation."  *City of El Paso v. Salas-Porras Soule*, 6 F. Supp. 2d 616, 621 (W.D. Tex. 1998) (citing *Islander East Rental Program*, 917 F. Supp. 504, 511 (S.D. Tex. 1996).  As set forth in detail above, Winstead has been provided confidential information relating to numerous aspects of Ohio National's operations, as well as confidential information pertaining to its agents, legal theories for claims and defenses, and overall litigation and settlement strategy of agent disputes.

Winstead's insight gained from representing Ohio National poses a significant threat that Dunken will use such confidential information to Ohio National's disadvantage here, especially given the timing of the two matters; the information is far from stale.  Winstead should be disqualified here because the Fifth Circuit "bars attorneys from appearing in substantially related matters not only to protect individual parties against the adverse use of information but also 'to aid the frank exchange between attorney and client.'" *In re American Airlines, Inc.*, 972 F.2d at 619.    Allowing Winstead to proceed under these circumstances threatens to chill the frankness with which Ohio National communicates with its outside attorneys in confidence.  *See id*; *City of El Paso*, 6 F. Supp. 2d at 621 (citing *Islander East Rental Program*, 917 F. Supp. 504, 511 (S.D. Tex. 1996). That undermines the confidential relationship that is the very foundation of representation in an adversarial justice system.  To protect those expectations and Ohio National's confidential information, Winstead must be disqualified.

## IV.    REQUESTED RELIEF

For the reasons stated above, Winstead should be disqualified from serving as counsel adverse to Ohio National in this case.

Respectfully submitted,

By: ___s/ Raymond E. Walker___
        Mark T. Davenport
        Attorney-In-Charge
        State Bar No. 05418000
        Southern District No. 8599

        OF COUNSEL:

        Jill B. Davenport
        State Bar No. 00783680
        Southern District No. 15377
        Raymond E. Walker
        State Bar No. 24037663
        Southern District No. 36366

FIGARI & DAVENPORT, L.L.P.
3400 Bank of America Plaza
901 Main Street
Dallas, Texas  75202
(214) 939-2000
(214) 939-2090 (FAX)

ATTORNEYS FOR PLAINTIFF
OHIO NATIONAL LIFE
ASSURANCE CORPORATION

## CERTIFICATE OF CONFERENCE

On August 22, 2011, Jill B. Davenport conferred with Jason Bernhardt regarding the relief sought in foregoing Motion.  Dunken opposes the Motion; therefore, this Motion is presented to the Court for determination.

        ___s/ Raymond E. Walker___
        Raymond E. Walker

## CERTIFICATE OF SERVICE

I certify that all attorneys deemed to accept service of the above-referenced document electronically will be notified via the Court's CM/ECF system and all other will be served via certified mail, return receipt requested on this 22nd day of August 2011.

s/ Raymond E. Walker
Raymond E. Walker
